**Note for Publication**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANNERIS MOREL and HUGO MOREL TAVEAREZ, *on behalf of himself and all others similarly situated*,<br><br>    **Plaintiffs,**<br><br>    **v.**<br><br>GOYA FOODS, INC. and A.N.E. SERVICES, INC.,<br><br>    **Defendants.** | Civil Action No. 20-5551 (ES) (CLW)<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendants Goya Foods, Inc. and A.N.E. Services, Inc.'s motion to partially dismiss Plaintiffs Anneris Morel and Hugo Morel Tavearez's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 47). The Court has considered the parties' submissions, and the Court held oral argument on January 27, 2022. For the following reasons, Defendants' motion is GRANTED.

## I.    BACKGROUND

Plaintiffs are sales representatives of Defendants, servicing Defendants' customers in separate geographic areas in New York State. (D.E. No. 6 ("Am. Compl.") ¶¶ 3–4). At the start of their employment, and through their own separate businesses, Plaintiffs signed materially similar employment contracts that are titled "Broker Agreement." (*Id.* ¶ 21; *see also* D.E. No. 47-3, Exs. A–B, Broker Agreement).[1] The Broker Agreement indicates that Plaintiffs are paid on a

---

[1]    Plaintiffs did not attach their broker agreements to the Amended Complaint. But Defendants attached both to their motion to dismiss, and the Court may consider the agreements because they are integral to and explicitly relied

commission basis, subject to certain mandatory and optional deductions, and are responsible for all expenses they incur when carrying out their duties as sales representatives.  (Am. Compl. ¶ 36; Broker Agreement ¶¶ 7(b), 8, 13 & 16).  The Broker Agreement also classifies Plaintiffs as independent contractors.  (Am. Compl. ¶ 25; Broker Agreement ¶ 4).

However, Plaintiffs claim they are employees under New York law because Defendants exercised substantial control over their work; their work is integral to Defendants' business; and they were unable to work independently of, and were thus economically reliant on, Defendants. (Am. Compl. ¶¶ 25–35).  And because they are employees, Plaintiffs claim, they are entitled to two labor protections under New York law that do not extend to independent contractors.  First, Plaintiffs point out that, under New York law, an employer may not take a deduction from an employee's wages, unless some exception applies.  (*Id.* ¶ 55 (citing N.Y. Lab. L. § 193)).  Yet, Plaintiffs claim Defendants took four such deductions—specifically, by (i) deducting 15% of all earned commissions per week to create a reserve-fund as insurance against future unpaid invoices of Defendants' customers (the "reserve-fund deduction"); (ii) deducting additional amounts if the reserve fund did not cover at least 40% of unpaid invoices (the "bad-debts deduction"); (iii) deducting amounts to pay for workers' compensation insurance if the sales representative elected to have coverage through Defendants (the "workers' compensation deduction"); and (iv) failing to reimburse sales representatives for business expenses they incurred on the job ("unreimbursed business expenses").  (*Id.* ¶¶ 38–39 & 61–62; *see also* Broker Agreement ¶¶ 7(b), 8, 13 & 16).  By doing so, Plaintiffs claim that "Defendants unlawfully shift the costs of doing business (including

---

upon in the Amended Complaint.  *See, e.g.*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  Plaintiffs do not dispute the Court doing so.  (D.E. No. 57-1, Plaintiffs' Opposition Brief ("Opp. Br.") at 12 ("Plaintiffs do not oppose consideration of the Broker Agreement in evaluating the motion to dismiss . . . .")).  When citing the agreements, the Court will refer to the version attached as Exhibit A to Defendants' motion to dismiss, because the parties do not suggest there are any material differences between the two versions.

insuring its employees and protecting against non-payment of customers) to its employees." (Am. Compl. ¶ 38).

Second, Plaintiffs point out that New York law requires an employer to supply its employees with notice, in the employee's primary language, containing information regarding the employee's wages and the employer's business. (*Id.* ¶¶ 64 & 69 (citing N.Y. Lab. L. § 195)). Defendants, however, did not provide such notice, according to Plaintiffs. (*Id.* ¶¶ 68 & 70).

On May 5, 2020, Plaintiffs filed suit against Defendants. (D.E. No. 1). They amended their complaint on May 15, 2020, asserting two causes of action—one under New York Labor Law § 193 for unlawful deductions and unreimbursed business expenses, and the other under New York Labor Law § 195 for failure to provide notice. (Am. Compl. ¶¶ 55–71). Defendants move partially to dismiss the Amended Complaint. (D.E. No. 47; *see also* D.E. No. 47-1 ("Mov. Br."); D.E. No. 61 ("Reply")).

## II.    LEGAL STANDARD

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Federal Rule of Civil Procedure 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v.*

*Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### III.   DISCUSSION

Defendants' motion to dismiss is limited.  They do not challenge Plaintiffs' claim that they and other sales representatives are employees under New York law. (Mov. Br. at 2).  Nor do they challenge Plaintiffs' claim under New York Labor Law § 195, which requires Defendants to provide notice of certain information to Plaintiffs.  (*Id.*).  Instead, Defendants challenge Plaintiffs' claim under New York Labor Law § 193, and only two aspects of it—specifically, as that claim pertains to the reserve-fund deduction and to unreimbursed business expenses.  (Reply at 1 n.1 & 10–11 n.7).  The Court addresses each aspect in turn.

### A.   Reserve-Fund Deductions

Defendants argue that Plaintiffs' § 193 claim regarding the reserve-fund deduction should be dismissed because the Amended Complaint does not plausibly plead that the amounts deducted by Defendants are "wages" under New York law.  (Mov. Br. at 8–11).  The Court agrees.

With exceptions that do not apply here, New York Labor Law § 193(1) prohibits an employer from making "any deduction from the *wages* of an employee" (emphasis added).  Section 190(1) defines wages as "the *earnings* of an employee for labor or services rendered, regardless of whether the amount of *earnings* is determined on a time, piece, commission or other basis" (emphasis added).

In *Pachter v. Bernard Hodes Group., Inc.*, 891 N.E.2d 279 (N.Y. 2008), the New York Court of Appeals explained that the legality of a deduction "depends on when [a] commission [i]s 'earned' and [becomes] a 'wage' that [i]s subject to the restrictions of section 193." *Id.* at 284. Under the common law rule, "a broker who produces a person ready and willing to enter into a

contract upon his employer's terms has earned his commissions." *Id.* (cleaned up).  However, "it is well settled that parties to a transaction are free to depart from the common law by entering into a different arrangement." *Id.*  The parties "are free to add whatever conditions they may wish to their agreement" and "may provide that the computation of a commission will include certain downward adjustments from gross sales, billings or receivables." *Id.* (cleaned up).  "In that event, the commission will not be deemed 'earned' or vested until computation of the agreed-upon formula." *Id.*; *see also Srour v. Dwelling Quest Corp.*, 842 N.E.2d 13, 13 (N.Y. 2005) (explaining that the parties "are free to add whatever conditions they may wish to their agreement" (quoting *Feinberg Bros. Agency v. Berted Realty Co.*, 517 N.E.2d 1325, 1326 (N.Y. 1987)).

Moreover, the agreed-upon formula may permit an employer to deduct amounts for uncollectible debts, credits or refunds provided to a customer, or losses to the employer. *Pachter*, 891 N.E.2d at 285; *Gold v. New York Life Ins. Co.*, 153 A.D.3d 216, 227 (1st Dept. 2017); *Holick v. Cellular Sales of New York, LLC*, No. 12-584, 2019 WL 3253941, at *8 (N.D.N.Y. July 19, 2019); *In re Morgan Stanley Smith Barney LLC Wage & Hour Litig. (Morgan Stanley)*, No. 11-3121, 2013 WL 6255697, at *5 (D.N.J. Dec. 4, 2013).  For example, in *Pachter*, 891 N.E.2d 279, the Court of Appeals upheld deductions for uncollectible debts and nonpayments to customers because the adjustments of those amounts were made before the commission was deemed earned under the parties' implied agreement. *Id.* at 284–85.  Indeed, "neither section 193 nor any other provision of article 6 of the Labor Law prevented the parties . . . from structuring the compensation formula so that Pachter's commission would be deemed earned only after specific deductions were taken from her percentage of gross billings"—those deductions being "for nonpayments by customers and the cost of Pachter's assistant, as well as miscellaneous work-related expenses." *Id.* at 285.  In *Gold*, 153 A.D.3d 216, the First Department, relying on *Pachter*, upheld deductions for

policy cancellations and refunds because those deductions were "part of their agreed-upon measure of compensation"—thus rendering those deductions not part of the plaintiffs' *earned* wages. *Id.* at 226.[2]  And in *Morgan Stanley*, 2013 WL 6255697, the court granted a motion to dismiss the plaintiffs' § 193 claims because the parties' implied agreements provided for a commission formula that allowed the defendant to deduct money for plaintiffs' assistant compensation and trading losses for certain years. *See id.* at *5; *see also Cohan v. Medline Indus., Inc.*, 843 F.3d 660, 668 (7th Cir. 2016) (holding that employer's "accounting for negative growth was part of the calculation of what commission was to be 'earned,' per the agreement of the parties").

The Amended Complaint does not plausibly allege that Defendants took the reserve-fund deduction from Plaintiffs' "earned" commissions.  Instead, the Amended Complaint merely alleges that Defendants deducted some amount for a reserve account—without alleging any facts that Defendants took the amount from Plaintiffs' "earned" commissions.  (Am. Compl. ¶¶ 38 & 61). The Broker Agreement clears this gap up in Defendants' favor.

Specifically, ¶ 13 provides that a sale representative's commission is 3.5% of the first $11,000 in weekly sales and then 3.1% of weekly sales above $11,000.  (Broker Agreement ¶ 13). It then goes on, "[e]*xcept as provided in Paragraph 16 below*, commissions shall be deemed earned when goods are delivered and the invoice paid."  (*Id.* (emphasis added)).  Paragraph 16 then contains the reserve-fund deduction—providing that a sales representative is responsible for a portion of Defendants' losses for "bad debts," and indicating that, "[t]o secure the faithful performance by Broker of this Paragraph 16, and by signing this Agreement, Broker authorizes A.N.E. to retain fifteen percent . . . of the weekly Broker commissions due Broker from A.N.E.

---

[2]     While *Gold* was later reversed on the issue of compelled arbitration, the Court of Appeals did not address the unlawful deductions issue—so *Gold* remains instructive.  Indeed, on that issue, at least one court has applied *Gold* post-reversal.  *See Holick*, 2019 WL 3253941, at *8.

pursuant to Paragraph 13 . . . ." (*Id.* ¶ 16).  Paragraph 16 then indicates: "Commissions retained

by A.N.E. hereunder shall be deemed earned when such monies are withdrawn by or paid to Broker

by A.N.E." (*Id.* (emphasis added)).

Reading ¶¶ 13 and 16 in conjunction, it is clear that a sales representative does not earn the

commission allotted to the reserve-fund deduction until the conditions under ¶ 16 are satisfied.

Because the Amended Complaint does not allege those conditions were satisfied,[3] Plaintiffs fail

to state a claim that Defendants took the reserve-fund deduction from Plaintiffs' "earned"

commissions.

Plaintiffs do not cite any cases reaching a contrary result when applying New York law to

similar employment contracts.  Instead, they cite various cases and an Opinion Letter of the New

York State Department of Labor, all of which stand for the undisputed proposition that an employer

cannot deduct money from an employee's *earned* compensation.  (*See* Opp. Br. at 5 (citing D.E.

No. 57-4, Exhibit B); *id.* at 20–21 (citing *Maldonado v. La Nueva Rampa, Inc.*, No. 10-8195, 2012

WL 1669341, at *8 (S.D.N.Y. May 14, 2012); *Gold v. New York Life Ins. Co.*, No. 09-3210, 2011

WL 2421281, at *7 (S.D.N.Y. May 19, 2011); *Gennes v. Yellow Book of New York, Inc.*, 776

N.Y.S.2d 758, 760 (N.Y. Sup. Ct. 2004)).  As explained above, the Amended Complaint does not

plausibly allege that Defendants deducted the reserve-fund amount from Plaintiffs' *earned*

commissions.

Plaintiffs' other arguments to the contrary are not persuasive.  First, they argue that ¶ 13 of

the Broker Agreement alone determines when commissions are earned.  (Opp. Br. at 5–6, 18–19

---

[3]      At oral argument, counsel for Plaintiffs suggested that Defendants were not honoring the conditions under
¶ 16.  Paragraph 16 provides that the sales representative has "the right to request withdrawal of monies retained by
A.N.E. as security for Broker's obligations under this Paragraph, but such withdrawals by Broker are limited to the
amount by which such monies held by A.N.E. exceed $3,000.00, after deduction of all sums owed to A.N.E. by Broker
and deduction of 40% of Broker's bad debts."  (Broker Agreement ¶ 16).  To the extent Plaintiffs believe Defendants
are not honoring their right to withdraw funds, Plaintiffs may move for leave to amend under the applicable federal
rule to assert a claim for breach of contract.

& 24–25).   The Court disagrees.   As discussed above, ¶ 13 specifies when a commission is generally earned—with the carveout "[e]xcept as provided in Paragraph 16 below."   (Broker Agreement ¶ 13).

Second, Plaintiffs argue that New York law forbids an employer from shifting the cost of business on the employee, that an employer can only take a deduction for the employee's benefit, and that Defendants' position, if accepted, would gut § 193's protections and thereby violate public policy. (Opp. Br. at 6, 14–23).   The purpose of § 193, Plaintiffs argue, is "to assure that the unequal bargaining power between an employer and an employee does not result in coercive economic arrangements by which the employer can divert a worker's wages for the employer's benefit." (*Id.* at 22 (quoting *Angello v. Lab. Ready, Inc.*, 859 N.E.2d 480, 484 (N.Y. 2006))).   Defendants' position allows them to do just that, Plaintiffs go on, by allowing them, through clever drafting, to choose when sales representatives are protected under § 193.   (*Id.* at 22–23).   The Court again disagrees.   Section 193(1) prohibits deductions from wages, § 190(1) defines wages as earnings, and the New York Court of Appeals has explained that the parties may determine when an amount is earned and in fact has upheld an implied agreement permitting deductions for uncollectable debts. *See Pachter*, 891 N.E.2d at 284 (explaining that the legality of a deduction often "depends on when" a commission is deemed "earned" and thus deemed a "wage" under the parties' express or implied agreement).   The purpose of a deduction is therefore immaterial if the deduction is not made against an *earned* commission.[4]

Third, Plaintiffs argue that "additional discovery is needed to determine whether . . . the Broker Agreement violates § 191(1)(c)," which concerns the frequency at which employers must

---

[4]    For the same reasons, the Court disagrees with Plaintiffs' suggestion that the Broker Agreement violates public policy by effectively waiving § 193's protections. (Opp. Br. at 6 & 14–15).   Indeed, § 193's protections apply only to earned wages.

pay their employees.  (Opp. Br. at 27–28).  But Plaintiffs have not brought a claim under

§ 191(1)(c), and they may not amend their complaint in opposition to a motion to dismiss.  *See*

*Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is

axiomatic that the complaint may not be amended by the briefs in opposition to a motion to

dismiss."  (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984))).

Fourth, Plaintiffs cite *Ortiz v. Goya Foods, Inc.*, No. 19-19003, 2020 WL 5249354 (D.N.J.

Sept. 3, 2020), which dealt with factually identical claims against the same Defendants but brought

by Pennsylvania sales representatives under Pennsylvania law.  (Opp. Br. at 2–3 & 30–31).

Defendants moved to dismiss the complaint, and the court in *Ortiz* denied the motion.  Specifically,

the court rejected Defendants' identical argument regarding when commissions are earned under

the Broker Agreement, reasoning that "issues related to what amounts could be considered wages

and when such wages could be considered earned raise questions of fact which go beyond the

scope of this motion."  *Ortiz*, 2020 WL 5249354, at *5.   Defendants then moved for

reconsideration, and the court denied the motion, clarifying (i) that "flattening the earning of the

wage into the moment of payment[] would gut [Pennsylvania's] protection against an employer's

failure to compensate an employee for his or her labor"; and (ii) that the Broker Agreement was

ambiguous because the Plaintiffs reasonably "contend[ed] that retaining a portion of commissions

for the reserve account [pursuant to ¶ 16] stands apart from the earned commission calculation

[pursuant to ¶ 13] and in fact does nothing more than subtract from earned commissions."  *Ortiz*

*v. Goya Foods, Inc.*, No. 19-19003, 2020 WL 6363716, at *2 (D.N.J. Oct. 29, 2020).

However, *Ortiz*'s first rationale is specific to Pennsylvania law.  Here, the Court is

concerned with New York law.  And as discussed above, the Broker Agreement does not gut the

protections of § 193.  *See Pachter*, 891 N.E.2d at 284.[5]  As to *Ortiz*'s second rationale, the Court

does not find ambiguous the interplay between ¶¶ 13 and 16 of the Broker Agreement.  In other

words, ¶ 13 does not alone determine when commissions are earned.  Instead, ¶ 16 governs when

the amounts for the reserve-fund deduction are earned.  And making this determination is entirely

appropriate when deciding whether to grant a motion to dismiss.  *See, e.g.*, *IKB Int'l S.A. v.*

*Wilmington Tr. Co.*, 774 F. App'x 719, 724 (3d Cir. 2019) (affirming dismissal and explaining that

contract interpretation presents a question of law for a court to determine); *Morgan Stanley*, 2013

WL 6255697, at *5–6.

Finally, at oral argument, counsel for Plaintiffs suggested that this case is one of first

impression because, unlike the defendant in *Pachter*, Defendants here deduct commissions

otherwise earned for the purpose of funding *future* bad debts that have not yet accrued.  (*See also*

Opp. Br. at 10 ("In this manner, Goya is able to deduct money from a sales representative's past

earnings to cover current or new bad debts."); *id.* at 16 ("The 15% reserve-fund deduction is made

all the more egregious, in light of the fact that the deductions are taken to <u>protect the employer</u>

against the mere <u>*possibility*</u> of losses." (emphasis in original)).  Said another way, while Plaintiffs

conceded at oral argument that an employer can deduct bad debts, as the employer did in *Pachter*,

they appear to argue that the deduction must be made contemporaneously with the bad debt's

accrual.

But Plaintiffs do not account for what *Pachter* said about the scope of conditions the parties

may add to their agreements: the parties "are free to add *whatever* conditions they may wish to

their agreement."  891 N.E.2d at 284 (emphasis added).  Moreover, the result here is the functional

---

[5]      The Court further notes that under ¶ 13 a sales representative is entitled to the vast majority of the commissions, and that under ¶ 16 a sales representative is entitled to request money from the reserve fund.  This case therefore does not present a situation where, by flattening the earning of the wage into the moment of payment, the employer is gutting § 193(1).

equivalent of the parties agreeing to a reduced commission—that being 85% of 3.5% or 3.1%, depending on the amount of weekly sales.  Viewed that way, it is clear that the reserve-fund deduction is part and parcel of the earned commission calculation.

Accordingly, the Court dismisses Plaintiffs' § 193 claim insofar as it challenges the deductions for the reserve fund.  There being no indication that Plaintiffs can cure the defects described above, the claim is dismissed *with prejudice.  See Morgan Stanley*, 2013 WL 6255697, at *5–6 (dismissing § 193 claims with prejudice).

### B.     Business Expenses

Defendants argue that Plaintiffs' claim regarding unreimbursed business expenses should be dismissed because they do not allege that those expenses reduced their earnings below the minimum wage. (Mov. Br. at 11–13).  Plaintiffs do not dispute this argument.  (*See generally* Opp. Br.).  And the Court agrees with it: New York law does not require an employer to reimburse its employee for business expenses unless failing to do so reduces the employee's compensation below the minimum wage.  *See Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010) ("[Federal and New York labor laws] allow employers to shift the cost of uniform purchase and maintenance to employees as long as doing so does not reduce the employee's wage below the minimum wage or lower the amount of overtime pay due."); *see also Cazares v. 2898 Bagel & Bakery Corp.*, No. 18-5953, 2020 WL 2832766, at *5 & n.6 (S.D.N.Y. May 31, 2020) (same); *Chan v. Big Geyser, Inc.*, No. 17-6473, 2018 WL 4168967, at *7 (S.D.N.Y. Aug. 30, 2018) (same); *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 534 (E.D.N.Y. 2017) (same); *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 507 (S.D.N.Y. 2013) (same).  Plaintiffs do not allege that they earned below the minimum wage.  Therefore, they do not plausibly allege their claim

11

regarding unreimbursed business expenses.  Because the defect in this claim is factual, the Court will dismiss the claim *without prejudice*.

**IV.  CONCLUSION**

For the foregoing reasons, Defendants' motion partially to dismiss (D.E. No. 47) Plaintiffs' Amended Complaint is GRANTED.  Plaintiffs' § 193 claim concerning the reserve-fund deduction is dismissed *with prejudice*, and their § 193 claim concerning unreimbursed business expenses is dismissed *without prejudice*.  An appropriate Order accompanies this Opinion.

Date: January 28, 2022                                                    Esther Salas, U.S.D.J.

12